# UNITED STATES DISTRICT COURT
for the
Southern District of Indiana

**SEALED**

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. |
| YOUHUANG XIANG | ) 1:25-mj-01096-MG |
| | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  November 23, 2025  in the county of  Marion  in the
Southern  District of  Indiana , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371; 545; and 1001 | Conspiracy; Smuggling Goods Into the United States; and False Statements |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

/s/ Tyler Creer
*Complainant's signature*

SA Tyler Creer, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by
telephone  *(reliable electronic means)*

Date: 11/25/2025

City and state:  Indianapolis, Indiana

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

# AFFIDAVIT

I, Tyler Creer, a Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since July 2022. I am currently assigned to the New Albany (Indiana) Resident Agency in the Indianapolis Division. My duties include the investigation of various violations of federal criminal law, including matters related to national security, counterespionage and counterintelligence related offenses, such as the theft of trade secrets and intellectual property as well as unregistered agents of foreign governments operating in the United States.

2. I make this affidavit in support of an application for a criminal complaint and arrest warrant charging Youhuang XIANG with violations of Title 18, United State Code, Sections 371 (conspiracy), Section 545 (smuggling goods into the United States), and Section 1001 (false statements).

3. The facts contained in this affidavit come from my personal observations, my training and experience, my review of documents and statements, information obtained from other law enforcement officers and/or individuals with knowledge of this matter. As this affidavit is only intended to establish probable cause for the requested complaint, it does not purport to set forth all my knowledge regarding this matter.

## APPLICABLE STATUTES

4. I am aware from my training and experience that Title 18, United States Code, Section 371, makes it unlawful for two or more persons to conspire to violate the laws of the United States.

5.      I am further aware that Title 18, United States Code, Section 545, makes it unlawful for anyone to fraudulently or knowingly import or brings into the United States, any merchandise contrary to law, or to receive, conceal, buy, sell, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law.  A violation of Title 18, United States Code, Section 545, carries a maximum potential prison sentence of twenty years for each count of conviction.

6.      Finally, I am aware that Title 18, United States Code, Section 1001, makes it unlawful to knowingly and willfully make any materially false, fictitious, or fraudulent statement or representation concerning any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, or to make or use any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

## BACKGROUND ON USDA PERMIT PROCESS

7.      Pursuant to the Plant Protection Act, 7 U.S.C. §§ 7701 – 7784, and the Federal Plant Pest Regulations, 7 C.F.R. §§ 330.100 – 330.207, the United States Department of Agriculture (USDA) regulates the importation of organisms which may negatively impact agriculture in the United States. These laws prohibit any person from importing into the United States any organism that "directly or indirectly injures, causes damage to, or causes disease in a plant or plant product" without first applying for and obtaining a permit from the USDA. 7 C.F.R. § 330.200. An individual who seeks to import such an organism from outside the United States "must be 18 years of age or older and have a physical address within the United States." Id. at § 201. In addition, the permit applicant must inform the USDA of the site and facility

where the organism will be stored so that the USDA can determine in advance whether the facility is "constructed and maintained in a manner that prevents the dissemination or dispersal" of the organism. Id. On the USDA website, there is a search option to validate if an organism requires a permit.[1] A search of *Escherichia coli* (*E. coli*) reveals that the USDA requires a permit for the importation of *E. coli*.

## PROBABLE CAUSE

8. Youhuang XIANG ("XIANG") is a citizen of the People's Republic of China (PRC).

9. XIANG received his undergraduate degree in Crop Breeding from Nanjing Agriculture University, in May 2015. On September 1, 2015, XIANG started his Ph.D. at the Chinese Academy of Sciences (CAS) Centre for Excellence in Molecular Plant Sciences (CEMPS) in Shanghai, PRC, where he studied Plant Physiology and Molecular Biology until May 31, 2022.

10. XIANG then applied for a United States Non-Immigrant Visa ("NIV") in April 2023 and was issued an J1 Visa for an appointment as a postdoctoral research associate in the Department of Biology at Indiana University ("IU") in Bloomington, Indiana, beginning on June 12, 2023

11. On March 8, 2024, IU renewed XIANG's J-1 visa for an extended period to continue his research at IU.

12. On April 23, 2025, XIANG was referred for a secondary inspection and interview by Customs and Border Patrol ("CBP") at Detroit Metropolitan Airport when he arrived on an

---

[1] https://efile.aphis.usda.gov/s/brs-permitting-assistant

3

inbound flight from Shanghai, PRC. According to documentation provided by CBP and reviewed by the FBI, XIANG was selected for the inspection because of his status as a J1 postdoctoral researcher in the field of plant genetics. Your affiant is aware that, at the time of XIANG's arrival in Detroit, federal authorities were actively investigating instances of U.S.-based researchers from the PRC smuggling samples of plant pathogens into the United States. During the interview on April 23, 2025, XIANG stated he was not affiliated with the Chinese Government and was not transporting any research materials.

13. During this investigation, the FBI has reviewed XIANG's NIV application which contained a number of documents supporting his application. Among those documents, the FBI has reviewed a letter from Indiana University appointing XIANG as a postdoctoral research associate. According to that appointment letter, XIANG's responsibilities as a postdoctoral research associate at IU were to help lead the research program on genome editing in wheat plants to confer resistance to fungal diseases.

14. Additionally, the FBI reviewed XIANG's Research Proposal/Study Plan attached to his NIV application. In that proposal/plan, XIANG listed funding for his research as coming from IU-Bloomington and the United States Department of Agriculture (USDA) National Institute of Food and Agriculture (NIFA), grant number 2022-67013-38265.

15. Open-source information released by IU, and reviewed by the FBI during this investigation, announced that, on September 15, 2022, IU researchers were awarded over $1.2 million for a USDA NIFA grant to generate wheat and barley lines with enhanced resistance to Fusarium Head Blight (FHB) caused by the fungus *Fusarium graminearum*. According to the IU announcement at the time, FHB disease reduces yield and grain quality as well as contaminates grain with mycotoxins. It threatens wheat production worldwide and is predicted

to become even more problematic in the future due to climate change. This disease is currently controlled mainly using heavy application of fungicides, which is detrimental to the environment. To develop FH-resistant wheat and barley, the IU researchers were collaborating with two other laboratories: one located at Purdue University and another based in the United Kingdom at Rothamsted Research. The identities of certain researchers participating in these studies at IU, Purdue, and Rothamsted Research are known to the FBI but not included in this affidavit.

16. During their investigation into this matter, FBI agents have reviewed numerous publications by XIANG included in his NIV, including a paper entitled *Translational Regulation of Plant Response to high Temperature by a Dual-Function tRNA Guanylyltransferase in Rice*, published on August 5, 2019. That paper listed XIANG's affiliations as the National Key Laboratory of Plant Molecular Genetics, CAS-CEMPS and Collaborative Innovation Center of Genetics & Development, Shanghai Institute of Plant Physiology & Ecology (SIPPE), Shanghai Institute for Biological Science, CAS, Shanghai 200032, China, University of CAS (UCAS), Beijing 100049, China. I know from my training and experience that the PRC "Key Laboratories" are overseen by the Chinese Government and have a history of concerning actions including technology transfer and theft of intellectual property.

17. On March 18, 2022, XIANG was listed, along with others from CAS-CEMPS, on an application for Chinese patent CN116790640A, labeled *A novel gene, sth1, that synergistically regulate plan salt tolerance, yield, and growth period, and its applications*.

18. In a CAS-CEMPS article from 2015, the Chinese Communist Party (CCP) 2015 cohort of master's-doctoral students at the Shanghai Institute of Plant Physiology and Ecology,

CAS, held a special seminar on "Studying the Party Constitution and regulations." XIANG is listed in the article as having given a speech at the seminar.

XIANG's Smuggling of <u>E. Coli</u> into the United States

19. On or about November 19, 2025, the Indianapolis Division of the FBI was alerted to a recent prosecution in the U.S. District Court, Eastern District of Michigan ("EDMI"), in which a Chinese national was charged with smuggling biological pathogens into the United States for the purpose of academic research. (*See United States v. Yunqing JIAN*, 2:25-cr-20701-SKD-KGA).

20. Specifically, agents participating in the EDMI prosecution advised FBI Indianapolis that their investigation uncovered concerning shipments from the PRC to individuals at IU whose research focused on pathogen resistance and susceptibility in wheat, the same as that of the EDMI subject. FBI Indianapolis then sought historical shipping and travel information from CBP for those individuals identified by the EDMI investigation, including XIANG, to identify similar patterns of behavior between the IU researchers and the Michigan subjects.

21. Information provided to the FBI by CBP included information about the history of shipments from China to certain individuals at IU conducting research into wheat pathogen resistance. That information indicated that XIANG was associated with that research and that XIANG received a shipment from China at his residence on March 28, 2024. CBP documentation revealed the package was sent to XIANG's Bloomington residence at 2951 E. Discovery Pkwy. Apt. I302, Bloomington, Indiana, from Guangzhou Sci Tech Innovation Trading, located in Guangzhou, PRC. According to the shipping documents, the package was valued at $186.00 and was described as containing "Underwear of Man-Made Fibers, Other

Womens."

22. The FBI assessed that it was odd for XIANG to purchase and ship women's underwear from China, and further assessed it as peculiar that a company by the name "Guangzhou Sci Tech Innovation Trading" would sell underwear or clothing.

23. Further inquiry into XIANG's background and possible involvement in smuggling pathogens resulted in the FBI learning from CBP that XIANG was currently traveling outside the United States and would be returning to the United States via Chicago O'Hare International Airport on November 23, 2025. The FBI subsequently contacted CBP at Chicago O'Hare and requested that XIANG be referred for a secondary inspection and interviewed.

24. On November 23, 2025, XIANG arrived at Terminal 5 of the Chicago O'Hare International Airport aboard American Airlines flight 87 from London Heathrow Airport. XIANG was inspected and interviewed by CBP officers upon his arrival. Your affiant and agents from FBI Indianapolis were present at the airport and observed XIANG's CBP interview from a separate room.

25. CBP created a "Record of Sworn Statement in Proceedings" to document XIANG's interview on November 23, 2025. Prior to the interview, a CBP officer advised XIANG that "[i]t is very important that you tell me the truth. If you lie or give misinformation, you may be subject to criminal or civil penalties . . . ." XIANG confirmed that he understood the CBP officer, that he was willing to answer questions, and that he was able to give statements in English without an interpreter. The interview of XIANG was recorded.

26. During the interview, XIANG stated that he had been in London participating in a short-term exchange program and had been away for six weeks. He explained further that he had been conducting research in London at Rothamsted Research, which collaborates with XIANG's

lab at IU to research fungal growth on wheat. XIANG also said that his supervisor at IU worked in the field of plant genetics and that all his classmates in China were familiar with the work being done at IU and aspired to work there as well. XIANG further stated that his postdoctoral research contract is set to expire on April 30, 2027, and he is unsure about where he was going to work after his contract expired. XIANG advised CBP he is considering either finding a job in the United States or returning to the PRC. Before coming to IU, XIANG said he worked at CAS-CEMPS with a specific researcher from 2015 to 2022, but that the two have not collaborated since XIANG's arrival in the United States. The identity of that researcher was disclosed to CBP and is known to the FBI. Despite admitting working at CAS-CEMPS, XIANG claimed he has never worked for the Chinese government.

27. When confronted by CBP officers with information that publications listed on his curriculum vitae, submitted as part of his NIV application, were produced in labs funded by the PRC government, XIANG said he was unsure of whether the labs were funded by the government. Based on available, open-source information, the FBI assesses that it is incomprehensible that someone of XIANG's education and life-experience in the PRC would not know that the relevant educational institutions in the PRC are funded by the PRC government.

28. During the interview, XIANG confirmed that he resided at 2951 E. Discovery Pkwy. Apt. I302, Bloomington, Indiana, in March of 2024, and that he had received a package from Guangzhou Sci Tech Innovation Trading, located in Guangzhou, PRC, at that address in March of 2024.

29. XIANG initially stated that the March 2024 shipment was a jacket and some other clothing he (XIANG) had ordered from China. After further questioning by CBP about whether a company called Guangzhou Sci Tech Innovations Trading sold clothing, XIANG admitted that

8

the shipment contained not only clothing, but also plasmid DNA from CAS. XIANG further stated that the plasmid DNA was derived from *Escherichia coli* (*E. coli*) bacteria and was shipped to XIANG specifically for use in his research at IU.

30. When asked why the shipment had been labelled as "Underwear of Man-made Fibers, Other Womens," XIANG said the package was labeled in that manner and the *E. coli* had been concealed within the clothing as a means of concealing the *E. coli* from CBP detection. XIANG further acknowledged he was aware that a permit was required in order to ship biological materials into the United States, and that he knowingly did not obtain one. XIANG also admitted that he, and those shipping the *E. coli* to him from China, sought to conceal the *E. coli* samples in the clothing shipment to circumvent U.S. law, namely the permit requirement.

## CONCLUSION

31. Based on the aforementioned factual information, I submit that there is probable cause to believe that Youhuang XIANG has committed violations of Title 18, United State Code, Sections 371 (conspiracy), 545 (Smuggling goods into the United States), and 1001 (false statements). Therefore, I respectfully request that the Court issue a criminal complaint and corresponding arrest warrant for Youhuang XIANG.

## REQUEST FOR SEALING

32. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from

prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

/s Tyler Creer
Tyler Creer
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

11/25/2025



Mario Garcia
United States Magistrate Judge
Southern District of Indiana

10